In re DECORA INDUSTRIES,
INC., et al., Debtors.

Miller & Holguin, Plaintiff,

v.

Decora Industries, Inc., Decora, Incorporated, Ableco Finance LLC, and the CIT Group/Business Credit, Inc., Defendants.

No. 00–4459 (JJF).
Adversary No. A–00–2021.

United States District Court,
D. Delaware.

Sept. 18, 2001.

Philip Trainer, Jr., Christopher S. Sontchi and Joseph C. Handlon, Esquires, of Ashby & Geddes, Wilmington, Delaware, Attorneys for Plaintiff Miller & Holguin.

James L. Patton, Jr. and Michael R. Nestor, Esquires, of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware. Of Counsel: Robert A. Klyman and Kristen Van Vleck, Esquires, of Latham & Watkins, Los Angeles, California, Attorneys for Defendants Decora Industries, Inc. and Decora, Incorporated.

Thomas G. Macauley, Esquire, of Zuckerman, Spaeder, Goldstein, Taylor & Kolker, LLP, Wilmington, Delaware. Of Counsel: Michael L. Cook, Esquire, of Schulte Roth & Zabel LLP, New York City, Attorneys for Defendant Ableco Finance LLP.

Tobey M. Daluz, Esquire, of Reed Smith LLP, Wilmington, Delaware. Of Counsel: Peter S. Clark, II, Esquire, of Reed Smith LLP, Philadelphia, Pennsylvania, Attorneys for Defendant CIT Group/Business Credit, Inc.

### MEMORANDUM OPINION

FARNAN, District Judge.

Presently before the Court is Plaintiff Miller & Holguin's Motion for Summary Judgment (D.I.10); Decora Industries, Inc. and Decora Incorporated's (collectively "Debtors") Motion for Summary Judgment (D.I.12); and Ableco Finance LLC's Cross Motion for Summary Judgment (D.I.13). For the reasons stated below, Miller & Holguin's Motion for Summary Judgment (D.I.10) will be denied; and Debtors' Motion for Summary Judgment (D.I.12) and Ableco's Cross Motion for Summary Judgment (D.I.13) will both be granted.

### BACKGROUND

The parties agree that the following facts are undisputed for purposes of determining on summary judgment, pursuant to Rules 4001, 7001, 7056 and 9014 of the Federal Rules of Bankruptcy Procedure, whether Miller & Holguin's alleged attorneys' lien on the Funds (as defined in the Stipulation of Undisputed Facts (D.I.9)) is senior in priority to the pre-petition lenders' purported lien on the Funds:

1. On December 5, 2000 (the "Petition Date"), Decora Industries, Inc. and Decora Holdings, Inc. (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. Since the Petition Date, Debtors have continued in possession and operation of their businesses as debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code

3. This is an adversary proceeding brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure for declaratory judgment and entry of an injunction.

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

5. Venue is this District is proper pursuant to 28 U.S.C. § 1409.

6. Miller & Holguin ("M & H") is a California partnership engaged in the practice of law with its principal place of business located at 1801 Century Park East, Seventh Floor, Los Angeles, California 90067.

7. Decora Industries, Inc. ("Decora") and Decora, Incorporated are debtors and debtors-in-possession in the above-captioned Chapter 11 cases pending in the District of Delaware.

8. Decora Industries, Inc. as Parent Company; Decora, Incorporated, as Bor-

rower; The CIT Group/Business Credit, Inc. ("CIT"), as Administrative Agent; and Ableco Finance LLC ("Ableco"), as Collateral Agent, (CIT and Ableco will collectively be referred to as the "Lenders"), entered into a Financing Agreement (the "Financing Agreement") on May 2, 2000. (D.I.9, Exh. A).

9. Contemporaneously with the execution of the Financing Agreement, Borrower and Decora executed certain security agreements (collectively referred to as the "Security Agreements") in favor of Ableco, as Collateral Agent for the Lenders. (D.I.9, Exh. B).

10. The Lenders filed financing statements (the "Financing Statements") in May 2000, with the Secretary of State of the State of Ohio and the New York State Department of State. (D.I.9, Exh. C).

11. M & H was retained by Decora in connection with the claims brought by Decora against Rubbermaid Incorporated ("Rubbermaid") with respect to an Asset Purchase Agreement (the "APA Claims") and a Transition Services Agreement entered into between Decora and Rubbermaid (the "TSA Claims"). Pursuant to an order of the United States District Court for the Northern District of Ohio, Eastern Division (the "Ohio District Court"), the APA Claims and the TSA Claims were heard simultaneously by an arbitration panel, before the American Arbitration Association ("AAA"), in Cleveland, Ohio, in late August and early September 2000.

12. During the course of the hearing, the parties settled certain of the TSA Claims for the amount of $773,354.00 (the "Settlement Amount"). That settlement was documented in a Stipulation for Dismissal and Judgment Entry filed with the AAA on or about October 6, 2000. (D.I.9, Exh. D). On or about October 30, 2000, Rubbermaid wire transferred the amount of $773,354.00 to Decora.

13. On October 16, 2000, the AAA issued its awards on all claims, exclusive of the Settlement Amount, in the amount of $9,026,843.40, which included costs, attorney's fees and pre-award interest (the "Arbitration Award"). (D.I.9, Exh. E). The Settlement Amount plus the Arbitration Award aggregates $9,800,197.40. On October 24, 2000, Decora requested that the Ohio District Court confirm the Arbitration Award and enter judgment pursuant thereto under 28 U.S.C. §§ 9 and 10. On or about December 4, 2000, judgment was entered with respect to the Arbitration Award in the Ohio District Court. (D.I. 9, Exh. F).

14. In connection with the Rubbermaid litigation, Miller & Holguin initially represented Decora on a fee-for-service basis. As of June 2000, Decora was in arrears to Miller & Holguin in attorney's fees and costs. After numerous discussions and negotiations, Miller & Holguin and Decora entered into a new fee agreement (the "August Fee Agreement"). (D.I.9, Exh. G).

15. Miller & Holguin asserts that, as of November 15, 2000 the amount of outstanding fees and costs owed by Decora to Miller & Holguin was $1,039,822.84. Miller & Holguin further asserts that the amount of the premium to which Miller & Holguin is entitled under the August Fee Agreement is $376,037.45. Thus, Miller & Holguin asserts that, as of November 15, 2000, the total amount owed by Decora to Miller & Holguin for fees, costs and the premium was $1,415,860.29. Miller & Holguin further asserts that Decora has failed to pay approximately $100,000 to third party vendors and professionals who provided services in connection with the Rubbermaid litigation. Miller & Holguin asserts that those third party vendors and professionals now are looking to Miller &

Holguin as Decora's purported agent for payment, which brings the total amount owed to Miller & Holguin by Decora to $1,515,860.29.

16. The Debtors dispute the amount owing to Miller & Holguin, including, without limitation, Miller & Holguin's entitlement to the premiums as well as Miller & Holguin's calculation of the premium.

17. Prior to its execution, Miller & Holguin sent draft copies of the August Fee Agreement to Ableco and its counsel, Frederic L. Ragucci of Schulte Roth & Zabel LLP. (D.I.9, Exh. H, I). After receipt of the August Fee Agreement, Mr. Ragucci had telephone conversations with Howard J. Unterberger of Miller & Holguin, confirming receipt of the draft and advising Mr. Unterberger that Mr. Ragucci would discuss the August Fee Agreement with Ableco. Ableco is not a party to the August Fee Agreement. Mr. Unterberger telephoned Mr. Ragucci several times requesting Ableco's consent to the August Fee Agreement. Ableco asserts that neither Ableco nor Mr. Ragucci consented in any way to the August Fee Agreement and that Mr. Ragucci had no authority to consent. Miller & Holguin asserts that Ableco did not object to the August Fee Agreement.

18. Miller & Holguin resigned as counsel to Decora, effective November 15, 2000. (D.I.9, Exh. J). The parties hotly dispute the facts and circumstances prior to, surrounding and after the resignation of Miller & Holguin.

19. On November 15, 2000, Rubbermaid wire-transferred approximately $7.8 million directly to Decora. This sum represents the $9,026,843.40 award that Miller & Holguin obtained for Decora, less the pre-judgment interest portion that Rubbermaid asserted was calculated incorrectly.

20. On November 16, 2000, the AAA issued a Supplemental Decision which reaffirmed in all respects the October 16th Arbitration Award. A copy of that Supplemental Decision was transmitted by U.S. mail to Miller & Holguin and to counsel for Rubbermaid by letter dated November 27, 2000. (D.I.9, Exh. K).

21. On November 16, 2000, Miller & Holguin filed its Notice of Attorney's Lien and Notice of Motion to Enforce Attorney's Lien with the Ohio District Court. (D.I.9, Exh. L). The Notice of Attorneys' Lien was also served on Rubbermaid by overnight delivery sent on November 15th and by facsimile sent on November 17th.

22. Also on November 16, 2000, Miller & Holguin filed in the Ohio District Court its Ex Parte Application for Order Imposing Constructive Trust Over Funds Held by Plaintiff. (D.I.9, Exh. M).

23. On November 20, 2000, the Ohio District Court entered an order directing that Decora pay Miller & Holguin the sum of $700,000. (D.I.9, Exh. N).

24. On November 21, 2000, Miller & Holguin transmitted to Rubbermaid via facsimile and U.S. mail a further Notice of Attorney's Lien. (D.I.9, Exh. O).

25. On or about November 22, 2000, Decora paid Miller & Holguin $700,000.

26. On November 30, 2000, Miller & Holguin sent counsel for Rubbermaid a letter advising Rubbermaid that Miller & Holguin held an attorney's lien on the unpaid balance of the Rubbermaid award. (D.I. 9, Exh. P).

27. Subsequently, Rubbermaid deposited the amount of $1,182,767.03 in the Registry of the Ohio District Court (the "Funds"). (D.I.9, Exh. Q). Pursuant to the Stipulation and Order certain of those funds will be transferred to an escrow account established at Wilmington Trust Company pursuant to the Escrow Agree-

ment dated January 24, 2001 and to be distributed pursuant to the terms and conditions of the Stipulation and Order. (D.I.9, Exh. R).

28. On December 5, 2000, this Court entered the Interim Order (I) Approving Debtor's Emergency Motion For Order Approving Post–Petition Financing and Related Relief, (II) Granting Security Interests And Superiority Claims Pursuant To Sections 105 And 364(c) Of The Bankruptcy Code And Bankruptcy Rules 2002, 4001 And 9014 And (III) Scheduling A Final Hearing On This Emergency Motion Pursuant To Bankruptcy Rule 4001(c) (the "Interim Order"). (D.I.9, Exh. S).

29. Through the Interim Order, the Court authorized the Debtors to enter into that certain Financing Agreement (the "DIP Loan Agreement") by and between the Debtors and the Lenders (collectively the "DIP Lenders"). (D.I.9, Exh. T).

30. On December 20, 2000, this Court entered the Final Order (I) Approving Debtors' Emergency Motion For Order Approving Post–Petition Financing And Related Relief And (II) Granting Security Interests And Superpriority Claims Pursuant To Sections 105 and 364(c) Of The Bankruptcy Code And Bankruptcy Rules 2002, 4001 And 9014 (the "Final Order"). (D.I.9, Exh. U).

31. On December 15, 2000, Miller & Holguin filed with this Court and served on December 15, 2000 the Verified Complaint. That same day, Miller & Holguin also filed and served the following documents:

(a) Motion Of Miller & Holguin For Temporary Restraining Order And Preliminary Injunction (the "TRO Motion");

(b) Memorandum Of Law In Support Of Motion Of Miller & Holguin For Temporary Restraining Order and Preliminary Injunction;

(c) Motion Of Miller & Holguin For Relief From The Automatic Stay Or, In The Alternative, Adequate Protection (the "Stay Relief Motion"); and

(d) Objection Of Miller & Holguin To Entry Of A Final Order Approving Post–Petition Financing.

32. Miller & Holguin, the Debtors, Ableco, CIT and the Official Committee of Unsecured Creditors appointed in the Debtors' cases have agreed to resolve the Verified Complaint, TRO Motion and Stay Relief Motion on the terms and conditions set forth in the Stipulation and Order. (D.I.9, Exh. V).

33. On January 12, 2000, Miller & Holguin filed and served its First Amended Complaint.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be granted if the Court determines "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, " 'courts are to resolve any doubts as to the existence of genuine issues of fact against the moving parties.' " *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981) (citations omitted). Furthermore, any reasonable inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Spain v. Gallegos*, 26 F.3d 439, 446 (3d Cir.1994) (citing *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir.1993)).

On January 16, 2001, the Court approved a Stipulation and Order Resolving Motion Of Miller & Holguin For Tempo-

rary Restraining Order And Preliminary Injunction (the "Stipulation and Order"). Pursuant to the Stipulation and Order, the parties agreed to place the Funds in escrow, stipulate to the material facts, and resolve this adversary proceeding by way of cross-motions for summary judgment. (D.I.5).

## DISCUSSION

 Under Ohio law, an attorney has what is generally known as a particular, special or charging lien upon a judgment, decree or award obtained ·for a client. *Mancino v. City of Lakewood,* 36 Ohio App.3d 219, 523 N.E.2d 332, 334 (1987). An attorney's right to payment of fees earned in the prosecution of litigation to judgment, though usually denominated a lien, rests on the equity of the attorney to be paid out of the judgment obtained by him or her, and is generally upheld on the theory that the attorney's services and skill created the fund. *See Filius v. Outdoor Sports Headquarters, Inc.,* C.A. No. C–3–90–358, 1995 WL 1612532, at *2 (S.D.Ohio May 18, 1995) (citing *Cohen v. Goldberger,* 109 Ohio St. 22, 141 N.E. 656, 658 (1923)). Although there is no statutory provision in Ohio creating or recognizing the right of an attorney to a lien as security for payment of compensation for services rendered to a client, it is plain from the opinions of various Ohio courts that the right exists, and in proper cases the courts will lend their aid to maintain and enforce it. 6 *Ohio Jur.3d, Attorneys at Law* § 160 (1996).

 However, the particular or charging lien does not extend beyond the charges and fees related to the action in which the judgment was recovered, and does not cover any general balance due the attorney from the client for other professional services:

[I]n no case, so far as we know, has it been held that the court may order fees to be paid out of funds recovered in one case, for services rendered in another case, or for any services rendered except in the case in which the money was recovered.

*Phillips v. Travelers Ins. Co.,* 1911 WL 1656, at *1 (Ohio Cir.); *see also Cohen,* 141 N.E. at 658 (approving lien as not "in excess of a reasonable charge for the service rendered in procuring the fund in question").

 In this case, Miller & Holguin asserted that it was owed approximately $700,000 for fees and expenses arising from the Rubbermaid Litigation. The remainder of the Aggregate Miller & Holguin Fee Claim resulted from services unrelated to the Rubbermaid litigation, including corporate and securities work. In accordance with the precedent of the Ohio courts, the Court can only permit enforcement of the asserted lien for the fees earned by Miller & Holguin in procuring the "Rubbermaid fund," and therefore, the Court concludes that the August Fee Arrangement did not create a valid attorneys' lien for matters unrelated to the Rubbermaid Action, and any such claim must be pursued by Miller & Holguin as an unsecured claim against the estate. Further, the Court concludes that Miller & Holguin's attorneys' lien was extinguished by payment of the Rubbermaid Fees, or alternatively, that such lien is junior in priority to liens asserted by Ableco and CIT, and therefore, Debtors' Motion for Summary Judgment (D.I.12) and Ableco's Cross Motion for Summary Judgment (D.I.13) will both be granted.

## CONCLUSION

For the reasons discussed, Miller & Holguin's Motion for Summary Judgment (D.I.10) will be denied; and Debtors' Mo-

tion for Summary Judgment (D.I.12) and Ableco's Cross Motion for Summary Judgment (D.I. 13) will be granted.

An appropriate Order will be entered.